IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KENNETH ANDERSON, SR.        )
                             )
    v.                       )    NO. 3:07-0073
                             )
LINDA CAVER                  )

TO: Honorable Aleta A. Trauger, District Judge

# REPORT AND RECOMMENDATION

By Order entered March 20, 2007 (Docket Entry No. 12), the Court referred this action to the Magistrate Judge, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), for management of the case, for decisions on all pretrial, nondispositive motions, to issue report and recommendations on all dispositive motions, and to conduct any necessary proceedings under Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court are the defendant's motion to dismiss (Docket Entry No. 25) and motion for summary judgment (Docket Entry No. 41). The plaintiff has filed a response (Docket Entry No. 31) to the motion to dismiss but has not responded to the motion for summary judgment.[1]

For the reasons set out below, the Court recommends that the motion to dismiss be denied but that the motion for summary judgment be granted and this action be dismissed.

---

[1] By Order entered October 22, 2007 (Docket Entry No. 50), the Court granted the plaintiff an extension of time to November 12, 2007, to file his response to the motion for summary judgment. On November 29, 2007, the plaintiff filed a notice (Docket Entry No. 53) stating that he had mailed his response to both the Court and the defendant but that both mailings were returned to him undelivered. Although he states that he does not intend to abandon the case, he did not attach his response to the notice or separately file his response.

# I. BACKGROUND

The plaintiff filed this action pro se and in forma pauperis against Linda Caver, a police officer with the Police Department for the City of Clarksville, Tennessee ("Police Department"). The plaintiff brings his action under 42 U.S.C. § 1983 seeking compensatory and punitive damages. The defendant is sued in her individual and official capacities.[2]

The plaintiff's allegations as set out in his complaint are as follows:

> On Nov. 7th, 2006, Officer Linda L. Caver of the Montgomery Co. Police Dept did forcibly enter into my residence without probable cause proper authority, or valid warrant, and assaulted me physically, emotionally and mentally, then proceeded to place me under arrest when clearly no crime had been committed. Officer Linda L. Caver then thereby placed me within the county jail, where I endured further abuse by other inmates prior to release from custody. Following the above actions Officer L. Caver could only try to facilitate her actions by acusing (sic) me of simply resisting arrest, when I was never under arrest!

See Complaint at 5 (emphasis in original). Based upon these allegations, he asserts that his civil rights were violated by invasion of privacy, aggravated assault, false arrest, and false imprisonment. See Complaint at 7. He further contends that he was a victim of racial profiling. Id.

The defendant filed an answer (Docket Entry No. 28) to the complaint denying the allegations of wrongful conduct. The defendant also filed the pending motion (Docket Entry No. 25) to dismiss the claims against her in her official capacity. The defendant contends that these claims are actually municipal liability claims against her employer but that the plaintiff failed in his complaint to identify any official policy or custom of the Police Department as the cause of the alleged wrongful conduct and, thus, failed to show any basis for a municipal liability claim.

The plaintiff responded by filing a motion to amend his complaint (Docket Entry No. 34) and submitting a proposed amended complaint. He contends that the proposed amended complaint (Docket Entry No. 37) includes specific allegations concerning Police Department policies, alleges

---

[2] The plaintiff originally named the defendant in only her official capacity. In a notice filed May 1, 2007 (`Docket Entry No. 22`), however, he stated that his claims were brought against the defendant in both her individual and official capacities.

2

that the defendant was not properly trained, and cures any deficiencies in the original complaint regarding the official capacity claims.[3]

## II. MOTION FOR SUMMARY JUDGMENT

Based upon her own affidavit, the affidavit of Jack Hemmingsen, the deposition of Cornelio Hunt, and excerpts from the plaintiff's deposition, see collectively Docket Entry No. 42, the defendant asserts that the undisputed facts of this action show that she is entitled to summary judgment on the plaintiff's claims. The defendant argues that the plaintiff cannot show that his constitutional rights were violated, cannot show a municipal liability claim, and, assuming that state law claims are alleged in the complaint, cannot support such claims. The defendant further argues that she is entitled to qualified immunity from any damage claims brought against her.

The defendant contends that the facts show that the plaintiff was a guest, not a named tenant, in an apartment in Clarksville, Tennessee. Because of ongoing criminal activity which was occurring at the apartment complex, Mr. Hunt, the owner of the apartment complex, had been requesting the assistance of police officers to stop the illegal activity by evicting tenants and by having the police serve Notices of Criminal Trespass on non-tenants.

On November 7, 2006, the defendant and Officer Jack Hemmingsen were stopped by Mr. Hunt as they were driving through the apartment complex and were asked by Mr. Hunt to serve a Notice of Criminal Trespass upon the plaintiff, whom Mr. Hunt had seen at the complex but whom he believed was not a tenant. The officers approached the plaintiff in the apartment complex parking lot where he had parked his car, but the plaintiff did not wish to speak to the officers, refused to stop, and instead left the parking lot and entered an apartment rented by Mr. Charles Felts, an individual known to the police officers from their prior interactions at the apartment complex. The officers proceeded to the apartment and spoke with Mr. Felts, who eventually acknowledged the presence

---

[3] By contemporaneously entered order, the Court has granted the motion to amend.
3

of the plaintiff in the apartment, who had been staying in the apartment for several days with the permission of Mr. Felts. Mr. Felts permitted the officers to enter the apartment. At the time Mr. Felts permitted the officers to enter the apartment, the plaintiff was apparently in the kitchen of the apartment but he subsequently came into the foyer area of the apartment.

The officers entered the apartment and requested that the plaintiff remove his hands from his pockets and step outside the apartment. The plaintiff refused to exit the apartment, approached the officers, and began to close the door of the apartment, striking the defendant as she was standing in the doorway. The officers pushed the door back toward the plaintiff, who continued to attempt to shut the door. The defendant then used a taser device on the plaintiff. No further use of force occurred.

The police officers took the plaintiff into custody and he was charged by the defendant with resisting a stop, frisk, halt, arrest or search in violation of Tenn. Code Ann. § 39-16-602. The plaintiff was booked into the Montgomery County Jail. Although it is unclear how long the plaintiff remained in jail as a result of the arrest, the charge against him was ultimately dismissed upon recommendation of the district attorney because the plaintiff was facing felony burglary charges and had remained in jail for several days as a result of the arrest.

### III. CONCLUSIONS

A. Motion to Dismiss

The defendant's motion to dismiss should be denied. The defendant's arguments for dismissal of the official capacity claims which were raised in the motion to dismiss for failure to state a claim are subsumed into the motion for summary judgment. Accordingly, the motion to dismiss should be denied as moot.

4

B. Motion for Summary Judgment

The Court finds that summary judgment should be granted to the defendant. Based upon the evidence which is before the Court, no reasonable jury could find in favor of the plaintiff if his claims were presented at trial.

1. Summary Judgment Standard

In considering a motion for summary judgment, Rule 56(c) of the Federal Rule of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979).

The Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985). The non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but

5

that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed. 2d 569 (1968).

### 2. Constitutional claims against the defendant in her individual capacity

The defendant asserts that she is entitled to qualified immunity from the plaintiff's claim for damages under Section 1983. The affirmative defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Gardenhire v. Schubert, 205 F.3d 303, 310-11 (6th Cir. 2000).

The qualified immunity analysis requires a step-by-step inquiry. The Court must first determine whether a constitutional violation has occurred. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Sigley v. City of Parma Heights, 437 F.3d 527, 537 (6th Cir. 2006); Jackson v. Leighton, 168 F.3d 903, 909 (6th Cir. 1999). If the Court finds that no violation has occurred, then the case must be dismissed at this threshold stage. Saucier, 533 U.S. at 201. If the Court finds that a constitutional violation has occurred, the Court must then determine whether the constitutional right was clearly established at the time of the incident in question such that a reasonable officer in the position of the defendant would have known that her conduct violated that right. See Saucier, 533 U.S. at 201; Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900-01 (6th Cir. 2004); Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003); Burchett v. Kiefer, 310 F.3d 937, 942-43 (6th Cir. 2002); Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002).

As set out below, the Court finds that the plaintiff has not presented facts which, even if viewed in the light most favorable to the plaintiff, support a claim that his constitutional rights were violated by the defendant. Accordingly summary judgment should be granted to the defendant on

the claims against her individually because the plaintiff fails to satisfy the first inquiry of the qualified immunity analysis.

The plaintiff, assuming that he was a regular overnight guest in the apartment, had an expectation of privacy in the apartment sufficient to give him standing to raise a Fourth Amendment claim based upon the defendant's entry into the apartment. Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). However, such a claim fails because Mr. Felts, the named tenant and regular resident of the apartment who had actual authority over the apartment, gave consent for the police to enter the apartment. Such consent rendered the defendant's entry into the apartment lawful. "An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." United States v. Jenkins, 92 F.3d 430, 436 (6th Cir. 1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). See also United States v. Hudson, 405 F.3d 425, 441 (6th Cir. 2005); United States v. Scott, 578 F.2d 1186, 1189 (6th Cir. 1978).

After entering the apartment, the defendant continued to act within the parameters of the Fourth Amendment when she began her questioning of the plaintiff. It is undisputed that the two police officers had been requested by the owner of the apartment complex to serve a notice of trespass on the plaintiff, who was not a named tenant, and that the plaintiff had evaded interacting with the police officers in the parking lot of the apartment complex. It is further undisputed that the apartment complex was a place where frequent criminal activity had been occurring. It is undisputed that the extent of the exchange between the plaintiff and the defendant consisted of her asking the plaintiff to remove his hands from his pockets and to step outside the apartment to continue the conversation. The undisputed facts also show that this exchange lasted only a very brief period of time before the plaintiff escalated the situation by attempting to shut the door and striking the defendant with the door.

A court inquiring into the validity of a temporary detention under the Fourth Amendment "must use wide lens and survey the totality of the circumstances." See United States v. Sokolow, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The undisputed facts in this case support the conclusion that the defendant's actions fell within the acceptable scope of a brief, investigative questioning of the plaintiff. Terry v. Ohio, 392 U.S. 1, 16, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Avery, 137 F.3d 343, 352 (6th Cir. 1997). See also Lee v. Hefner, 136 Fed.Appx. 807, 2005 WL 1385930 (6th Cir. 2005) (unpublished) (individual's flight from police officer in high crime area permitted brief investigatory stop under Terry). The defendant was not acting arbitrarily, but was acting based upon specific and articulable facts which warranted the minor intrusion upon the plaintiff's privacy in order to investigate the situation. Furthermore, the defendant's preliminary requests for the plaintiff to remove his hands from his pockets and to exit the apartment are acceptable methods for ensuring the safety of the police officers during the encounter. See United States v. Romain, 393 F.3d 63, 70-76 (1st Cir. 2004); United States v. Gori, 230 F.3d 44, 55-56 (2nd Cir. 2000). See also Radvansky v. City of Olmstead Falls, 395 F.3d 291, 309 (6th Cir. 2005) ("[d]uring a Terry stop, officers may draw their weapons or use handcuffs so long as circumstances warrant that precaution").

The plaintiff also claims that he was assaulted and that excessive force was used against him. It is undisputed that the defendant was standing inside the apartment in the vicinity of the doorway when the plaintiff began to push the door shut striking the defendant with the door. In response to this action, the undisputed facts show that the defendant and the other police officer pushed back on the door, were met with resistance from the plaintiff, and then the defendant shot a taser at the plaintiff. The probes of the taser, however, became entangled in the plaintiff's coat. The plaintiff was then taken into custody without further incident.

Under the Fourth Amendment, individuals have a right to be free from excessive force at the hands of the police. See Graham v. Connor, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443

(1989); Lyons v. City of Xenia, 417 F.3d 565, 575 (6th Cir. 2005); Kostrzewa v. City of Troy, 247 F.3d 633, 638-39 (6th Cir. 2001). The fact that force may have been used, however, is not itself a constitutional violation since "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396.

The touchstone question is the reasonableness of the police officer's actions. The reasonableness inquiry is an objective one: were the officer's actions objectively reasonable in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation. Graham, 490 U.S. at 397. Determining reasonableness requires careful attention to the particular facts of each case because what is reasonable is not capable of universal definition. Bell v. Wolfish, 441 U.S. 520, 559 (1979). In Graham, the Supreme Court instructed reviewing courts to consider various factors in evaluating excessive force claims and noted that the proper application of the reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. These factors do not constitute an exhaustive list, however, and the ultimate question is whether the totality of the circumstances justifies a particular use of force. Id.

Based upon these facts, the Court finds that the plaintiff cannot show that excessive force was used against him by the defendant. The plaintiff initiated a physical confrontation with the police officers by pushing the door against the defendant and striking her with the door. He continued this confrontation by continuing to push the door shut on the officers. The defendant was justified in using the level of force at issue in this action in her attempt to obtain control of the situation at hand. There is no evidence before the Court that any gratuitous force was used, that the defendant acted in a manner that was excessive or malicious, or that force continued to be used against the plaintiff after

9

he was subdued by the police officers. There is also no evidence before the Court showing that the force used against the plaintiff resulted in any type of injury to him.

The plaintiff's final Fourth Amendment claim is that he was falsely arrested and illegally imprisoned as a result of the false arrest. The Fourth Amendment requires probable cause for an arrest. See Crockett v. Cumberland College, 316 F.3d 571, 580 (6th Cir. 2003). Determining probable cause turns on whether the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Courts view this question through the lens of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001).

The plaintiff was arrested on the day in question and charged with violating Tenn. Code Ann. § 39-16-602(a), which makes it illegal for:

> a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at the officer's directions, from effecting a stop, frisk, halt, arrest, or search of any person, including the defendant, by using force against the law enforcement officer or another.

The plaintiff's claim fails because the plaintiff's conduct gave the defendant probable cause to believe that he had violated this statute. By pushing a door against the defendant and striking her with the door while she was in the process of trying to question the plaintiff and serve him with a notice of trespass, the plaintiff intentionally prevented or obstructed her effort to effect a stop of the plaintiff.

It is irrelevant that the defendant had no intent to arrest the plaintiff at the time she began her interaction with him. It was the plaintiff's own conduct in the apartment which provided grounds for his arrest. Furthermore, the fact that the charge was eventually dismissed fails to support his claim because the plaintiff has not shown that dismissal of the charge was in any way linked to a lack of

10

probable cause for the charge. The fact that criminal charges are ultimately dismissed does not render an arrest improper unless there is a determination on the issue of probable cause that is attached to the dismissal of the charges. See Wilson v. Morgan, 477 F.3d 326, 336 at n.4 (6th Cir. 2007). See also Tenn. Code Ann. § 39-16-602(b).

The plaintiff asserts in his amended complaint that his Fifth Amendment right to silence was violated because he was not permitted to remain silent and was not permitted to refuse to a field interview. The plaintiff's claim lacks merit. The Fifth Amendment states that "no person . . . shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment does not prohibit police officers from speaking to individuals or from asking them questions but provides a right against self-incrimination and prohibits actions at the hands of police officers which result in an individual providing incriminating information against himself without first being warned of the right not to do so and the right to have counsel present during a custodial interrogation. See Hiibel v. Sixth Judicial District Court of Nevada, 542 U.S. 177, 189-91, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). Neither of these situations is presented by the facts of the instant action.

The plaintiff also asserts that his Fourteenth Amendment rights were violated. Although he does not clearly explain his claim under the Fourteenth Amendment, the Court presumes that this claim is based either upon the allegations regarding the entry into the apartment or upon his assertion that he was the subject of racial profiling as set out in his original complaint. To the extent that the Fourteenth Amendment claim is based upon the defendant's entry into the apartment, this claim is the same as the plaintiff's Fourth Amendment claim and has been addressed herein. To the extent that the plaintiff contends that the defendant engaged in racial profiling in violation of his equal protection rights, his own deposition testimony negates such a claim as he admits that the defendant did not herself engage in any such behavior. See Plaintiff's deposition (Docket Entry No. 42) at 120-22.

### C. Official Capacity Claims

The claim against the defendant in her official capacity is treated as a claim against the entity for which she is an agent, the City of Clarksville acting through its police department. Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). In order to state an official capacity claim, the plaintiff must set out facts which support a claim of municipal liability. This requires a showing that the misconduct complained of came about pursuant to a policy, statement, regulation, decision or custom promulgated by the City of Clarksville. Monell v. New York City Department of Social Services, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In short, there must be a direct causal link between an official policy or custom and the alleged constitutional violation. Otherwise, a Section 1983 claim will not lie. See City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Doe v. Claiborne County, Tenn., 103 F.3d 495, 507-09 (6th Cir. 1996). The City of Clarksville cannot be held liable under a theory of respondeat superior merely because it is the defendant's employer. See Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994).

Summary judgment is warranted in favor of the defendant on the plaintiff's official capacity claims for two reasons. First, the Court has found that there are no facts which support a claim that the plaintiff suffered any kind of constitutional violation at the hands of the defendant. Without proof of an underlying constitutional violation, there cannot be a municipal liability claim.

Second, even assuming that the Court found that sufficient facts existed to raise genuine issues of material fact on the issue of whether the plaintiff's constitutional rights were violated, the plaintiff has not set forth any evidence which shows that such a violation occurred because of a municipal policy. Merely setting out that the police department had policies regarding the conduct of its officers related to field interviews, the use of force, and search and seizures, as set out in the plaintiff's amended complaint, see Amended Complaint at 4, is not sufficient to support a municipal

12

liability claim. The plaintiff must show that these policies themselves were the moving force behind the alleged constitutional violation. There is no such evidence before the Court. Similarly, the plaintiff's allegation that the defendant was not properly trained to comply with the policies is conclusory and is not sufficient to state a claim under Section 1983. Smith v. Rose, 760 F.2d 102, 106 (6th Cir. 1985); Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971).

### D. State Law Claims

It is unclear from the plaintiff's complaint whether he intends to set out causes of action based upon state law. Assuming he intends to make such claims, however, such claims should be dismissed. Upon the Court's dismissal of the plaintiff's Section 1983 claims, the Court no longer has original jurisdiction over any of the claims asserted by the plaintiff in this action, and the Court declines to exercise supplemental jurisdiction over any state law claims raised by the plaintiff. See 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction").

## R E C O M M E N D A T I O N

For the reasons set out above, the Court respectfully recommends that:

1) the motion to dismiss (Docket Entry No. 25) filed by defendant in her official capacity be DENIED AS MOOT;

2) the motion for summary judgment (Docket Entry No. 41) filed by the defendant in both her individual and official capacities be GRANTED as to all claims brought under 42 U.S.C. § 1983 and these claims be DISMISSED WITH PREJUDICE; and

3) all claims based upon state law asserted pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367 be DISMISSED WITHOUT PREJUDICE.

13

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

        Respectfully submitted,

        _____
        JULIET GRIFFIN
        United States Magistrate Judge